UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AFFORDO, INC.,

Plaintiff,

- against -

GUANGZHOU XINGXING COTTON TECHNOLOGY R&D CO., LTD.,

Defendant.

26-cv-1848 (JGK)

**Memorandum Opinion and Order**

**John G. Koeltl, District Judge:**

The plaintiff, Affordo, Inc. ("Affordo"), manufactures and sells women's underwear. Affordo brought this action against another women's underwear manufacturer, Guangzhou Xingxing Cotton Technology R&D Co., Ltd. ("Xingxing"), seeking declaratory judgments that (1) Affordo's women's thong undergarment product does not infringe Xingxing's patent, U.S. Design Patent No. D1,093,606 (the "'606 Patent") and (2) the '606 Patent is invalid under 35 U.S.C. §§ 171, 102, and 103. Xingxing responded by asserting three counterclaims: for infringement of the '606 Patent, for a declaratory judgment that the '606 Patent is valid and that Affordo has infringed it, and for attorneys' fees under 35 U.S.C. § 285.

Xingxing now moves pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction prohibiting Affordo from, among other things, manufacturing or selling the products that allegedly infringe the '606 Patent. For the following reasons, Xingxing's motion is **denied.**

# I

Based on the submissions of the parties, the Court finds the following facts and reaches the following conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(2).

## A

Xingxing is a Chinese company that develops, manufactures, and sells intimate apparel products, including women's thongs. See Decl. of Xintian Zhou ("Zhou Decl.") ¶ 3, ECF No. 13-1. In October 2024, Xingxing launched its LUCKMEEY brand stores on Amazon.com and TikTok Shop, where it sells intimate apparel products. Id.; see also Decl. of Benjamin E. Weed ¶ 4, ECF No. 21-1 (observing that LUCKMEEY sells other intimate apparel products beyond women's thongs).

Xingxing owns various patents related to undergarments, including the '606 Patent—titled "INSERT FOR UNDERGARMENT"—which issued on September 16, 2025.[1] Zhou Decl. ¶ 4; see also Zhou Decl., Ex. A, ECF No. 13-2. The '606 Patent is a design patent for a "gusset insert" that can be placed or integrated into women's thongs. The gusset insert has three layers: (1) a broad trapezoidal outer layer that widens toward the top, with a flat bottom edge and rounded upper corners; (2) a middle trapezoidal layer, nested within and smaller than the outer layer, that tapers toward a fully rounded, downward-facing arch at its base; and (3) an innermost trapezoidal panel nested within

1 Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

the middle layer that mirrors the middle layer's shape. The '606 Patent contains the following illustrations:



FIG. 1



FIG. 2



FIG. 3



FIG. 10

Zhou Decl., Ex. A. Xingxing has patented the same core design in China (ZL202530111616.5), the United Kingdom (UK 6459344), and the European Union (EU 015111486-0004). Zhou Decl. ¶ 5. Xingxing contends that it developed the design for the '606 Patent over approximately six months and ultimately invested between $80,000 and $90,000 into the research and development for the design. Id. ¶ 6.

Xingxing first sold apparel containing the '606 patented design on the Amazon.com U.S. marketplace in January 2025. Id. ¶ 7. Since then, the product has achieved market recognition, including the Amazon.com "No. 1 New Release" designation in the women's underwear category and consistently positive consumer reviews. Id. Xingxing alleges that it has invested between $1.3 million and $1.5 million in market and brand development for its products,

including apparel containing the ’606 patented design, since the company launched. Id.

**B**

Through routine platform monitoring, Xingxing discovered that a competing brand, OEAK, was selling women’s thongs with an integrated gusset insert whose overall appearance Xingxing believes to be substantially identical to the ’606 patented design. Id. ¶ 9. Xingxing identified a TikTok Shop account called “OEAK-Bras” and an Amazon.com storefront operating under the Seller ID “A27NYM8UK8NXFF” offering women’s thongs with integrated gusset inserts under the OEAK brand. Id. Xingxing’s Business Director, Xintian Zhou, represents that he has personally reviewed “images of the OEAK products . . . against the figures of the ’606 Patent, along with images of test purchase(s) of OEAK products,” and concluded that, in his opinion, “[t]he overall ornamental appearance of the OEAK gusset insert is . . . substantially identical to the claimed design depicted in the drawings of the ’606 patent.” Id. ¶¶ 2, 12.

Consequently, between January and March 2026, Xingxing filed patent-infringement complaints against OEAK-Bras’s TikTok listings through TikTok’s official intellectual-property-complaint channel. Id. ¶ 11. TikTok determined that OEAK-Bras had infringed Xingxing’s intellectual property and removed OEAK-Bras’s listings. Id. Affordo, a California-based corporation,

markets its products under the OEAK brand and acknowledges that it controls the various OEAK-branded online storefronts. Compl. ¶ 2, ECF No. 1.

### C

On March 6, 2026, Affordo filed this lawsuit against Xingxing seeking declaratory judgments that (1) Affordo's products did not infringe the '606 Patent and (2) the '606 Patent is invalid. Id. ¶¶ 28–44. On April 16, 2026, Affordo commenced an ex parte reexamination proceeding (No. 90/016,188) with the United States Patent and Trademark Office challenging the validity of the '606 Patent.

On April 28, 2026, Xingxing answered the complaint and asserted several counterclaims, including for infringement of the '606 Patent, for a declaratory judgment that the '606 Patent is valid and that Affordo has infringed it, and for attorneys' fees under 35 U.S.C. § 285. See Answer, ECF No. 11. On April 29, 2026, Xingxing moved for a preliminary injunction prohibiting Affordo from, among other things, manufacturing or selling its allegedly infringing products. Mot. Prelim. Inj., ECF No. 12.

## II

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "To obtain a preliminary injunction, a party must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction

is in the public interest." Koninklijke Philips N.V. v. Thales DIS AIS USA LLC, 39 F.4th 1377, 1379–80 (Fed. Cir. 2022). "'[B]road classifications' and 'categorical rules' have no place in this inquiry." Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1148 (Fed. Cir. 2011) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006)). "Instead, courts are to exercise their discretion in accordance with traditional principles of equity." Id.

## III

To obtain a preliminary injunction, Xingxing "must establish that it is likely to suffer irreparable harm if the preliminary injunction is not granted and there is a causal nexus between the alleged infringement and the alleged harm." Metalcraft of Mayville, Inc. v. The Toro Co., 848 F.3d 1358, 1368 (Fed. Cir. 2017). "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).[2] "[T]he moving party

---

[2] The standard for issuing a preliminary injunction in a patent case is supplied by the law of the regional circuit in which the case arises—here, the Second Circuit. See Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc., 25 F.4th 998, 1004 (Fed. Cir. 2022). The Federal Circuit has, however, "built a body of precedent applying these general considerations to a large number of factually variant patent cases," and "give[s] dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 894 & n.3 (Fed. Cir. 1998); see also Nippon Shinyaku, 25 F.4th at 1004. Accordingly, Second Circuit law governs the general preliminary-injunction framework, while Federal Circuit law governs issues unique to patent law, including the likelihood-of-success standard, see Revision Mil., Inc. v. Balboa Mfg. Co., 700 F.3d 524, 525–26 (Fed. Cir. 2012), and the patent-specific irreparable-harm inquiry, see Apple Inc. v. Samsung Elecs. Co., 678 F.3d 1314, 1324–25 (Fed. Cir. 2012) (applying Federal

must first demonstrate that irreparable harm would be likely in the absence of a preliminary injunction before the other requirements for the issuance of a preliminary injunction will be considered." JBR, Inc. v. Keurig Green Mountain, Inc., 618 F. App'x 31, 33 (2d Cir. 2015). "Thus, if a party fails to show irreparable harm, a court need not even address the remaining elements" of the preliminary-injunction analysis. Sibanda v. Elison, No. 23-cv-5752, 2023 WL 7165046, at *1 (S.D.N.Y. Oct. 31, 2023).

As an initial matter, Xingxing's significant delay in moving for a preliminary injunction counsels against a finding of irreparable injury. "[F]ailure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995). In a patent-infringement case, "the relevant period of delay begins when the plaintiff learned of the alleged infringement." Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., No. 15-cv-4244, 2016 WL 4742317, at *4 (S.D.N.Y. Sep. 12, 2016). In this case, that is January 2026 at the latest. Although Xingxing filed patent-infringement complaints against OEAK-Bras's TikTok listings through TikTok's official intellectual-property-complaint channel, Zhou Decl. ¶ 11, that does not excuse Xingxing's delay in bringing a preliminary injunction motion. A delay of almost four months before bringing the motion for a preliminary injunction thus counsels against a finding of

Circuit law in considering irreparable harm from loss of market share caused by alleged infringement).

irreparable harm. Indeed, "courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." Gidatex, S.r.L. v. Campaniello Imps., Ltd., 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) (collecting cases); Maplebear Inc. v. City of New York, No. 25-cv-9979, 2026 WL 181637, at *12 (S.D.N.Y. Jan. 22, 2026) (the movant's "substantial delay in moving for preliminary relief three months after Local Laws 123 and 124 were enacted and four months after Local Laws 107, 108, and 113 undermines its claim of irreparable injury").

In addition to waiting too long, Xingxing has not shown actual irreparable injury. Xingxing argues that it will suffer irreparable harm in the absence of emergency relief through "diminished goodwill, damage to the LUCKMEEY brand's reputation, loss of exclusivity, inability to realize a return on investment, and loss of market share and future sales." Mem. Supp. Mot. Prelim. Inj. 12, ECF No. 13. These alleged injuries, however, are either not irreparable in the relevant sense or are unsupported by the record.

Xingxing first argues that allowing Affordo to continue selling the allegedly infringing products will harm Xingxing's goodwill and the LUCKMEEY brand's reputation. But Xingxing points to no evidence supporting this assertion. The closest Xingxing comes is Mr. Zhou's allegation that "[s]hould the Infringing Products generate negative consumer experiences, which upon information and belief, have, [sic] the reputation and goodwill of the LUCKMEEY brand and '606 Patent have been damaged in ways that are neither calculable nor correctable." Zhou Decl. ¶ 18. This allegation is both

speculative and conclusory. Mr. Zhou opines on what he believes the reputational damage to LUCKMEEY's brand would be if Affordo's products generated negative reviews and then asserts, without explanation, that any resulting reputational damage could not be remedied with monetary damages. However, "[t]he mere possibility or speculation of harm is insufficient." Koninklijke Philips, 39 F.4th at 1380. Xingxing must point to evidence in the record establishing that it "is likely to suffer irreparable harm without an injunction." Id.; see also Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999) ("The movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.").

To the extent Xingxing contends that the loss of its exclusive right under the '606 Patent is itself an irreparable harm, that argument also fails. Loss of the right to exclude does not, by itself, establish irreparable harm; if it did, every claim for patent infringement would presumptively involve irreparable harm. The Court of Appeals for the Federal Circuit, however, has expressly acknowledged that the Supreme Court "jettisoned the presumption of irreparable harm" and "abolishe[d] [the] general rule that an injunction normally will issue when a patent is found to have been valid and infringed." Apple Inc. v. Samsung Elecs. Co., 735 F.3d 1352, 1361 n.5 (Fed. Cir. 2013) (quoting Robert Bosch, 659 F.3d at 1149). Instead, the patentee must still establish a likelihood of actual, non-compensable injury. Xingxing's invocation of a "loss of

exclusivity," unsupported by evidence of injury that money damages cannot remedy, is insufficient.

Xingxing also contends that Affordo's continued sale of the allegedly infringing products will result in permanent price erosion of products containing the '606 patented design. Mr. Zhou alleges that "[t]he OEAK brand prices the Infringing Products below the market rate Xingxing established for the '606 design," which "has eroded the price premium the '606 design commands and suppressed pricing across the category." Zhou Decl. ¶ 14. According to Mr. Zhou, "[o]nce consumers are conditioned to a lower infringing price point, restoring pricing power requires substantial re-investment and time, and the damage to perceived value is not easily reversed." Id.

The Court of Appeals for the Federal Circuit has "recognized that price erosion and loss of market share may in some cases be irreparable injuries." Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc., 967 F.3d 1339, 1349 (Fed. Cir. 2020). But "a bare assertion of irreparable harm is never sufficient to prove such harm or justify the 'extraordinary remedy' of a preliminary injunction." Id. (affirming the district court's conclusion that the appellant had not shown a likelihood of irreparable harm where the plaintiff presented only assertions that the infringing product would result in price erosion and loss of market share). In this case, the only evidence Xingxing provides to support its claims of price erosion and loss of market share are Mr. Zhou's bare assertion that Affordo sells the allegedly infringing product at a lower price than the market rate Xingxing established for the '606 design and his generic observation that

consumers conditioned to a lower infringing price ordinarily resist efforts to increase prices. Xingxing has provided no evidence that consumers purchasing OEAK-brand women's thongs with integrated gusset inserts would otherwise purchase Xingxing's products or that Affordo sells its products at a meaningfully lower price than Xingxing. Indeed, Xingxing does not even provide evidence comparing the volume of the parties' sales. Mr. Zhou's unsupported contention about price erosion and loss of market share is insufficient to prove a likelihood of irreparable injury.

Xingxing next argues that it will lose sales and struggle to achieve a return on its investment in designing the '606 Patent without a preliminary injunction. This argument fails for several reasons. As an initial matter, it is unsupported by the record. Mr. Zhou alleges that Xingxing invested "approximately $80,000.00 to $90,000.00 in the research and development of the design." Id. ¶ 6. Xingxing provides no evidence, however, about the volume of its sales or how much revenue products containing the '606 patented design have generated—the kind of evidence that would bear on whether Xingxing has failed to achieve a return on its investment. Mr. Zhou also alleges that Xingxing has made a "substantial investment in marketing and brand development since launch, totaling approximately $1,300,000.00 to $1,500,000.00." Zhou Decl. ¶ 7. Xingxing never explains, however, whether these figures refer to the amount it invested in its overall brand marketing or only marketing for products containing the '606 patented design.

As for lost profits, Mr. Zhou alleges that "[e]ach sale through the at least 85 active Amazon ASINs [Amazon Standard Identification Numbers] diverts a sale from Xingxing's authorized LUCKMEEY channels, as both compete for the same consumer in the same product category." Id. ¶ 15. But Mr. Zhou provides no other evidence to support this contention. To support his lost-profits allegation, Mr. Zhou would also need to establish that consumers who purchase OEAK-brand women's thongs are doing so for the integrated gusset insert—the subject of the '606 Patent—and not for other reasons. Yet Xingxing provides no evidence to support that contention. "Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature." Apple, 678 F.3d at 1324–25.

Moreover, Xingxing never adequately explains why any lost sales cannot be adequately remedied with monetary damages. Rodriguez, 175 F.3d at 234. Far from showing that it cannot quantify any lost sales, Xingxing repeatedly provides an exact dollar amount—$584,912—for the "sales captured by the Infringing Products through about 85 infringing ASINs." Reply Supp. Mot. Prelim. Inj. 13, ECF No. 24. The availability of adequate monetary damages for Xingxing's alleged lost sales undermines its claim of irreparable injury. See Takeda, 967 F.3d at 1349 (a "nonspecific and unsupported assertion that [the defendant's] sales likely will cause irreparable harm falls far short of establishing that irreparable harm has occurred, or will likely occur, absent a preliminary injunction").

* * *

Xingxing has failed to establish on the record before the Court that it is likely to suffer irreparable harm in the absence of interim relief. And because Xingxing has failed to make the threshold showing of likelihood of irreparable harm, the "court need not even address the remaining elements" of the preliminary-injunction inquiry. Frommer v. MoneyLion Techs., Inc., No. 23-cv-6339, 2023 WL 6850324, at *1 (S.D.N.Y. Oct. 17, 2023); see also Monowise Ltd. Corp. v. Ozy Media, Inc., No. 17-cv-8028, 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018) (collecting cases). Xingxing's motion for a preliminary injunction is therefore **denied.**

## CONCLUSION

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, Xingxing's motion for a preliminary injunction is **denied**.

The Clerk is respectfully directed to close ECF No. 12.

**SO ORDERED.**

**Dated:** **New York, New York**
**July 2, 2026**

**John G. Koeltl**
**United States District Judge**